### GENERAL SHALE PRODUCTS CORPORATION v. STRUCK CONST. CO. et al.

#### No. 9113.

Circuit Court of Appeals, Sixth Circuit.

Dec. 2, 1942.

Robert H. French, of Cincinnati, Ohio (Thos. A. Ballantine, of Louisville, Ky., and Haveth E. Mau and Robert Houston French, both of Cincinnati, Ohio, on the brief), for appellant.

Wm. W. Crawford, of Louisville, Ky. (Wm. W. Crawford and William Furlong, both of Louisville, Ky., on the brief), for appellee.

Before HICKS, ALLEN, and McAL-LISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Claiming that appellees had violated the Robinson-Patman Act, Sec. 13, Title 15, U.S.C.A. by destroying appellant's competition in the sale of building materials, General Shale Products Corporation brought suit for triple damages. After a pre-trial hearing, the district court entered an order dismissing the case, from which appeal is taken. For brevity, appellant will hereafter be referred to as the Shale Company, and appellees, as the Struck Company and the Southern Company.

A brief review of the facts is required for an understanding of the contentions of the parties. The City of Louisville Municipal Housing Commission (hereafter referred to as the Commission) awarded a contract for the entire construction of extensive housing facilities, to the Struck Company. The Struck Company's bid, which may be called the main bid, to the Commission, was $1,731,000, and required the use of face brick, with hollow tile back-up for wall construction. It was stipulated that the bricks were to be figured in the bid at $20.00 per thousand, and that if the cost of the bricks was in excess thereof, the Commission would pay an additional amount, and if less, would receive a proportionate credit. An alternate bid, by the same contractor, provided that if "Speedbrik" were used, instead of face brick and hollow tile, as required by the main bid, the amount thereof would be reduced $13,000; and the Commission had the right, within sixty days after acceptance of the bid, to decide whether it would require face brick and hollow tile construction, or accept the alternate bid, providing for Speedbrik. Speedbrik is not brick. It is a masonry unit, combining outside facing and interior insulation, and is known as a through wall unit. In brief, it appears to be a unit in which are combined a brick face and hollow tile.

Bids on face brick were received from three companies. Two of the companies bid $16.75 per thousand. The Southern Company bid $18 per thousand. Before the Struck Company had submitted the alternate proposal on Speedbrik, it had secured quotations from appellant. The bid made by the Struck Company to the Commission on Speedbrik, was lower by $5,000 than the bid on brick at the low price of $16.75 per thousand. In order to persuade the Commission to select brick instead of Speedbrik, the Struck Company offered to furnish the brick requirement at $14.09 per thousand—or at a total cost of $13,002 less than its main bid. The bid on Speedbrik, submitted to the Commission by the Struck Company, was $13,000 less than its main bid. The Commission accepted the brick bid. Thereafter, the Struck Company communicated with the Southern Company and advised that if the latter would reduce its original bid of $18.00 per thousand, to $16.75

per thousand—equal to the bids of two other competing brick companies, it would be awarded the contract. The Southern Company agreed to this proposition; and the difference between the price of $16.75 per thousand and the price of $14.09 per thousand, the basis of the brick bid quoted by the Struck Company to the Commission, was absorbed by the Struck Company.

Appellant alleges that the Struck Company entered into an agreement with the Southern Company, in which the latter either reduced its price on the brick bid to the construction company, so as to destroy the competition offered by appellant, or that the Struck Company resold to the Commission, brick which it had purchased from the Southern Company at a price lower than that for which brick was sold to other purchasers, with the same result—that it destroyed the competition offered by appellant. It, therefore, based its cause of action on the claim that its competition in the sale of building materials was destroyed by appellees, in violation of the Robinson-Patman Act, which provides that it shall be unlawful for any person engaged in commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quantity.[1]

■ This case can be shorn of much confusion, and may be better understood by considering what it is not, than what it is. It is not a case in which appellant claims that appellees were guilty of statutory price discrimination in selling brick at a lower price than Speedbrik. It is not claimed that Speedbrik is a commodity of the same grade and quality as the brick which was actually used. It is not claimed that appellant was a competitor with the sellers of brick, within the meaning of the statute that its provisions were applicable to sellers of commodities of the same grade and quality. Appellant's theory, as set forth in its declaration, is not that the alleged price discrimination was against its product —it was not of the same grade and quality as brick,—but that the appellees discriminated in selling brick to the Commission at a lower price than *to other purchasers of brick;* and that such violation of the Act resulted in injury to appellant, inasmuch as brick was used instead of Speedbrik. The Act applies to discriminations between different purchasers of commodities of like grade and quality, and holds the seller, in such a case, liable. Appellant is not a purchaser, but a seller—and its only claim of injury, as above remarked, is based upon the loss of the sale of Spreedbrik, resulting from appellees' discrimination in selling brick at a lower price to the Commission, than to other purchasers of brick. A strong argument is advanced by appellees that the Act would not apply, even if appellant's allegations were admitted, for the reason that appellant's loss of the sale of Speedbrik, resulting from appellees' alleged discrimination toward purchasers of brick, is not the kind of injury sought to be avoided by the statute in forbidding price discriminations by a common seller, to two or more purchasers. But it is unnecessary, in view of our conclusions, to dwell on this proposition.

The dismissal of the action by the district court resulted from a pre-trial hearing, in which the parties agreed to be heard on four questions: (1) Whether the Clayton Act, as amended by the Robinson-Patman Act, prohibits concessions made by the Struck Company to the Commission under the circumstances set out in the depositions filed herein, since the Commission is a governmental agency; (2) whether the Commission is a governmental agency of such

---

[1] Title 15 U.S.C.A. § 13 (the Robinson-Patman Act), provides: "(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided,* That nothing contained in sections 12, 13, 14–21, 22–27 of this title shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: * * *."

character that the price concessions made by the Struck Company, to the Commission, are prohibited by the Clayton Act, as amended by the Robinson-Patman Act; (3) whether the Struck Company, in its dealings with the Commission, was a seller of commodities within the meaning of the Clayton Act, as amended by the Robinson-Patman Act, so that the concessions made by the Struck Company to the Commission are prohibited by the Act; (4) whether the Struck Company and the Southern Company, or either of them, were engaged in interstate commerce in the matters referred to in the appellant's petition and as shown by depositions.

The trial court held: (1) That the Southern Company and the Struck Company were engaged in interstate commerce; (2) that the Commission was a governmental instrumentality and not within the purview of the Robinson-Patman Act, as a purchaser; and (3) that there was no sale of brick by the Struck Company to the Commission.

Because of our determination herein, it is unnecessary to discuss the question of interstate commerce—and, in any event, the appellant contends that the district court was right on this point. Nor need we consider whether the Commission was a governmental instrumentality, if the district court's conclusion, that there was no sale of brick by the Struck Company to the Commission, is to be sustained. For, if there were no such sale of brick, then the Commission would not be a purchaser of the commodity; and the transaction between the Struck Company and the Commission would not fall within the compass of the Act, inasmuch as the statute applies only where a seller has discriminated in prices in sales to various purchasers.

The Struck Company did not sell the brick in question to the Commission, and cannot be held guilty of discriminating in prices between different purchasers as a consequence of the transaction. The object of the Commission was to secure the construction of extensive housing facilities. The Struck Company made a lump sum bid for the entire work, and it also made an alternate bid, in which Speedbrik was specified in place of face brick and tile. The Commission decided against Speedbrik. While the contract provided that a credit would be given, or a charge made, to the Commission, dependent upon whether the brick cost more or less than $20.00 per thousand, and also provided that the general bid would be decreased by $13,000 in case Speedbrik were selected by the Commission instead of brick and tile, nevertheless, the contract could not be said to be one for the sale of brick. The Commission would not be required to pay for a delivery of brick; and payments were made by the Commission to the Struck Company on the basis of the proportionate performance of the contract.

It is true that the cost of the brick was segregated for the purpose of showing how much would be the difference in the cost of the entire work, to the Commission, if brick were used instead of Speedbrik. But the alternate bid was limited to this purpose, and the transaction, eventually completed, was not divisible into a contract for work and labor, and a contract for the sale of brick. Nor is the situation changed by the fact that the Struck Company quoted brick prices to the Commission in order to secure its acceptance of this material. The total sum of the main bid was, by agreement, dependent upon the cost of the brick. It was only one of the factors in the cost of constructing a project in its entirety.

The Commission contracted for the completion of 59 building units and approximately 800 living room units. It is obvious that the Commission would not, and did not, agree to accept 2,000,000 brick at a stated price, apart from the agreement of the contractor to complete the work of construction, and, likewise, it cannot be maintained that the Struck Company would supply such a quantity of brick, at a great loss to itself, unless the transaction were woven into the general agreement entitling it to receive a fixed sum for furnishing labor and materials, and completing the building operation. The agreement was not for a transfer of chattels, or the sale of personal property, but was clearly a construction contract. Because there was no sale of a commodity by the Struck Company, it could not be guilty of discrimination in the price of a commodity to the Commission.

There remains the question whether the order of the district court, dismissing the action, should be affirmed, or whether the case should be remanded for trial.

In addition to its claim that the Struck Company had discriminated in the sale of commodities to the Commission, appellant further alleged that the Southern Company had violated the statute in selling at discriminatory prices to the Struck Com-

429

pany, and that both appellee companies had violated the Act through the use of price discrimination, with resultant injury to appellant.

The trial court did not pass upon the question of discriminatory practices by the Southern Company, or the alleged conspiracy and sale by both companies, for the obvious reason that the questions agreed upon for presentation to the district court, on the pre-trial hearing, did not include these issues. But in view of the circumstances of the hearing and appeal, and the presentation of the case before us, we are of the opinion that the order of dismissal should be affirmed.

In discussing this phase of the case, it may be remarked that in order that a sale from the Southern Company to the Struck Company be in violation of the Act, it would be necessary to show that the Southern Company had sold brick to the Struck Company at a price less than to its other customers—taking into consideration differentials, allowing for differences in cost of manufacturing, sale, or delivery, resulting from different quantities in which the brick was sold.

■■ If the Southern Company sold brick at a lower price, in this case, than to other customers, it must be agreed that it did so only by meeting bids of like amount made by two other brick companies, who were competing for the business; and even in instances where a statutory prima facie case of unlawful price discrimination is established, a seller may rebut such case by showing that his lower price was made in good faith to meet an equally low price of his competitor. Title 15, Sec. 13(b) U.S. C.A. If one of the other two bidders, at $16.75 per thousand, had been awarded the contract to supply brick, the result would have been the same, as far as appellant is concerned. The statute is not to be construed to mean that a seller is liable for price discrimination because of making a bid, on the same material, equal to that of other competitive bids. If appellant would not have been injured within the intendment of the statute, by acceptance of the bid of either of the other two competitors of the Southern Company, it could not have been injured by acceptance of a competing bid in the same amount by the Southern Company.

From the record before us, it does not appear that the Southern Company sold its commodity, in like lots, at a lower price to

the Struck Company than to another purchaser, or to other purchasers. In fact, the Southern Company insisted in its answer, that, because of the unusually large amount of brick involved, it agreed to sell at the same price as its competitors, and would be willing to sell brick at the same price, under the same circumstances, to any person, in like quantities. In testifying, as if on cross-examination, on deposition, the sales manager of the Southern Company stated that in making its bid, his company took into consideration that more than 2,000,000 brick were involved; that, after its first bid, it ascertained that its dealers, through whom it sold, would be willing to take less than the usual commission, due to the size of the job; that the truckers, for the same reason, agreed to reduce their hauling price; and that it was, therefore, able to lower its original bid to those of its competitors. It is provided in the statute that nothing shall prevent differentials which make only due allowance for differences in cost, resulting from different quantities in which such commodities are sold to purchasers.

However, the evidence on the hearing consisted of depositions; and if it were seriously contended by appellant that the Southern Company had sold to the Struck Company at less than its prices to other customers—taking into consideration the quantity sold—the point might arise that appellant was entitled to a trial on this proposition, for the issues presented by the questions on the pre-trial hearing did not cover this claim against the Southern Company. But on this appeal, it is conceded that "if the district court is right, no trial will ever be required," and it is stated by appellant that on the pre-trial hearing, both sides submitted certain "fundamental questions running to the entire cause of action." Furthermore, in its two briefs in this court, appellant makes no claim that the Southern Company was guilty of discrimination in its price to the Struck Company, but rather that the two companies conspired and sold to the Commission at a discriminatory price.

■ From the foregoing, the presentation and submission of the case by appellant, must be considered, as it was doubtlessly intended, an abandonment of the contention that the Southern Company sold its product to the Struck Company at lower prices than to its other customers, in violation of the Act. Whether the district

court should be affirmed, or the case remanded, therefore, depends upon the correctness of its holding that there was no sale by the Struck Company to the Commission. For if there were no sale, it is immaterial whether appellees were engaged in interstate commerce, or whether the Commission was a governmental instrumentality. Neither of the appellees could have been guilty of selling, or combining to sell, at discriminatory prices to the Commission, if the Commission were not a purchaser. Inasmuch as we concur in the holding of the district court on this controlling issue, the order of dismissal is affirmed.