**GAYLORD SHOPS, INC.,** Plaintiff,

v.

**PITTSBURGH MIRACLE MILE TOWN AND COUNTRY SHOPPING CENTER, INC.** and **J. C. Penney Co.,** Defendants.

Civ. No. 62–79.

United States District Court
W. D. Pennsylvania.
July 1, 1963.

Pittsburgh Miracle Mile Town and Shopping Center, Inc.

Thomas W. Pomeroy, Jr., of Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., for defendant J. C. Penney Co.

MARSH, District Judge.

The defendants in this anti-trust case have moved for summary judgment, pursuant to Rule 56(b) and (c), Fed.R. Civ.P., on all claims asserted by the plaintiff based on violations of § 2 of the Clayton Act, as amended by the Robinson-Patman Act, 49 Stat. 1526, 15 U.S.C. § 13 (hereinafter sometimes referred to as the Act), § 3 of the Clayton Act, 38 Stat. 731, 15 U.S.C. § 14, and the common law, on the ground that the record in this case discloses that defendants are entitled to judgment as a matter of law with regard to these claims.

At pretrial conference all parties agreed that the validity of these claims could be determined by the court in a preliminary hearing. It is our opinion that there exists no genuine issue as to any material fact, and the defendants are entitled to judgment as a matter of law.[1] Rule 56(c), Fed.R.Civ.P.

Plaintiff has conceded that it has no claim against the defendants based upon either § 3 of the Clayton Act or the common law; therefore, we need only determine the legal sufficiency of the plaintiff's claim under the Robinson-Patman Act.

Plaintiff has not specified the subsections of this Act upon which it relies. Defendants have asserted that only § 2 (a) and (e) could possibly be relevant to plaintiff's claims.[2] Plaintiff has not contended to the contrary. We agree with the defendants.

Guy L. Warman, of Metz, Cook, Hanna & Kelly, Pittsburgh, Pa., for plaintiff.

William H. Eckert, of Eckert, Seamans & Cherin, Pittsburgh, Pa., for defendant

1. Defendants have not moved for summary judgment with regard to plaintiff's claims based on the Sherman Anti-Trust Act, §§ 1, 2.

2. Section 2(a) provides in part: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States * * *, and where the effect of such discrimination may be substantially to lessen competition or tend

Taking as true all the well-pleaded facts contained in the complaint, and those stipulated among the parties, together with the facts disclosed in the answers to interrogatories and in the depositions on file, and giving to plaintiff the benefit of all reasonable inferences to be drawn therefrom; Bragen v. Hudson County News Company, 278 F.2d 615, 618 (3d Cir.1960); we do not believe they disclose a cause of action upon which relief can be granted based on the Robinson-Patman Act; for if all of the alleged and admitted facts were offered in evidence and proved at trial, a judgment would have to be directed in favor of defendants on plaintiff's claim based on that Act. Shipley v. Ohio National Life Ins. Co., 296 F.2d 728 (3d Cir.1961); Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 147 F.2d 399, 405 (2d Cir.1945), citing Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967; 6 Moore, Federal Practice, ¶ 56.15[1], p. 2107, ¶ 56.15[3], p. 2128, ¶ 56.15[8], p. 2165 (2d ed. 1953); Pittsburgh Hotels Ass'n, Inc. v. Urban Redevelopment Authority, 202 F.Supp. 486, 488 (W.D.Pa. 1962), aff'd 309 F.2d 186 (3d Cir. 1962).

The facts so disclosed are as follows:

Defendant, Pittsburgh Miracle Mile Town and Country Shopping Center, Inc. (Miracle Mile), a Pennsylvania corporation, owns and operates a shopping center located at Monroeville, Allegheny County, Pennsylvania. This defendant maintains an executive office located in Columbus, Ohio, where it executed the lease between itself and defendant, J. C. Penney Co. (Penney), and the lease between itself and plaintiff, Gaylord Shops, Inc. (Gaylord), and from where it generally directs the operation of its shopping center. This shopping center opened on or about November 4, 1954 and is currently operating.

Defendant, Penney, a Delaware corporation, with principal offices in New York City, became a tenant of Miracle Mile's shopping center on or about November 4, 1954, and since then has been the principal and largest tenant in the shopping center, as determined by leased storeroom space. Penney is engaged in trade or commerce among the several states.

Plaintiff, Gaylord, occupied a storeroom in the shopping center as a tenant of Miracle Mile from March 10, 1955 to July 31, 1961, under a lease dated December 11, 1954. Gaylord sold its physical assets and its good-will on July 31, 1961 to R.A.M. Fashions, Inc. under an agreement dated May 29, 1961.

The allegations of plaintiff's complaint and its amended complaint, which we accept as true for purposes of this motion are: That there existed an agreement between Miracle Mile and Penney whereby Penney enjoyed a "veto" power over tenants of Miracle Mile with regard to any changes or increases in the amount of space leased to smaller tenants, including Gaylord; that pursuant to this agreement a number of discriminatory rules and regulations as to the operation of the shopping center were instituted in favor of Penney and other tenants of its preference and against the smaller tenants, including Gaylord; that Penney had inserted in its lease with Miracle

to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided*, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: * * *."

Section 2(e) provides: "It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."

Mile a clause which prevented Miracle Mile from leasing certain space to Gaylord, for which Gaylord had applied on April 1, 1960, and upon which it desired to erect a larger storeroom than it was then occupying; and that Penney and plaintiff were engaged in the same line of commerce, i. e., women's retail apparel. Because of these discriminatory practices, rules and regulations, and because plaintiff could not expand its facilities or erect larger facilities, it was forced to sell its assets and abandon its storeroom at the shopping center.

The defendants contend that plaintiff's claim fails to meet the following requirements of the Robinson-Patman Act:

(A) Plaintiff has failed to fulfill two interstate requirements necessary for application of the Act, which are:

(1) That the defendant who discriminates must be engaged in interstate commerce; and

(2) That the discrimination must occur in the course of interstate commerce.

(B) The discrimination must occur in transactions involving "commodities", and this term does not embrace real estate.

(C) Subsections 2(a) and 2(e) of the Act apply only to sales and not to leasing transactions.

▉▉ It is our opinion that leases of real estate located in a single shopping center in Pennsylvania are not covered by the Act, even though the corporate lessor and lessees were otherwise engaged in interstate commerce. All of the subject real estate was situate in Pennsylvania, and, of course, did not move in interstate commerce. Even under the broad terms of the Sherman Act, real estate transactions have been held to be strictly local in nature,[3] and we do not think that the fact that the leases here involved were executed out-

side Pennsylvania calls for a different conclusion. Similarly, we are convinced that the discrimination to which plaintiff was subjected did not occur in the course of interstate commerce.

▉ We do not find it necessary to dwell upon the questions of interstate commerce, however, because we find even more fundamental reasons for our determination; namely, that the Act clearly applies only to commodities, as distinguished from real estate, and that it applies only to sales, as distinguished from leasing transactions.

▉ We agree with the defendants that real estate is not a "commodity" within the meaning of the Robinson-Patman Act.

▉ Without belaboring the point, it seems clear from a reading of the Act that where the agreement is not for the transfer of chattels, or the sale of personal property, the defendants cannot be guilty of violation of the Robinson-Patman Act. See: General Shale Products Corp. v. Struck Const. Co., 132 F. 2d 425, 428 (6th Cir. 1942); Columbia Broadcasting System v. Amana Refrigeration, 295 F.2d 375, 378 (7th Cir. 1961).

In Fleetway, Inc. v. Public Service Interstate Transp. Co., 72 F.2d 761, 763 (3d Cir. 1934), arising under § 2 of the Clayton Act prior to the Robinson-Patman Act amendment, the Third Circuit Court of Appeals made the following comment with regard to the term "commodities":

"The learned trial judge construed this section to apply to 'commodities' and not to transporation of passengers by motor busses. The section prevents discrimination in price between different purchasers of commodities which are sold for use, consumption, or resale within the United States, etc. This clearly refers to a commodity such as,

---

3. Cf. Lawson v. Woodmere, 217 F.2d 148 (4th Cir. 1954); Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742 (9th Cir. 1936), cert. denied, 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452; Monument

Bowl, Inc. v. Northern California Bowling Proprietors Ass'n, 197 F.Supp. 208 (N.D.Cal.1961); Northern California Monument Dealers Ass'n v. Interment Ass'n, 120 F.Supp. 93 (D.Cal.1954).

merchandise, and has no reference to transportation of passengers by busses, for discrimination in price between purchasers of commodities on account of differences in grade, quality, or quantity or a discrimination which makes only due allowance for difference in the cost of selling or transportation is not prohibited. It would be a strange and strained construction that would apply this language to transportation of passengers by busses."

For the same reason, we believe that it would be a strained and strange construction that would apply the language of the Robinson-Patman Act to real estate transactions.

We do not believe that the case cited by plaintiff, Burns v. Donohue, 79 F. Supp. 107 (D.N.J.1948), is in point. The statute under construction there specifically provided that certain real estate transactions would be regarded as commodities.

Defendants also contend that § 2 of the Robinson-Patman Act is not applicable because that section only applies to "sales" and does not apply to "leases". Again, we find that we agree with defendants.

In United States v. United Shoe Machinery Co., 264 F. 138, 164–165 (E.D. Mo.1920), aff'd 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708 (1922), it was held that leases, as distinguished from sales, were beyond the scope of § 2 of the Clayton Act. Although that section has been amended by the Robinson-Patman Act, we find nothing in the amendment which would justify any different interpretation than was employed in that case. Cf. County Theatre Co. v. Paramount Film Distributing Corp., 146 F.Supp. 933 (E.D.Pa.1956).

For the above reasons we believe that summary judgment should be entered in favor of the defendants with regard to any claim by plaintiff based upon the Robinson-Patman Act.

An appropriate order will be entered.