STUTZMAN FEED SERVICE, INC., formerly Satellite Mills, Inc., Plaintiff,

v.

TODD & SARGENT, INC., et al., Defendants.

Civ. No. 4–948–D.

United States District Court, S. D. Iowa, Davenport Division.

Jan. 24, 1972.

Gene R. Krekel, Hirsch, Wright, Link & Adams, Burlington, Iowa, for plaintiff.

Hegland, Newbrough, Johnston & Brewer, James A. Brewer, Ames, Iowa, for defendants.

### MEMORANDUM OPINION

STUART, District Judge.

This matter has come before the Court on the Motion for Summary Judgment filed by defendants Todd & Sargent, Inc. and Warren Sargent on March 26, 1971. The motion is based on three propositions. (1) Plaintiff had no capacity to sue as its corporate certificate had been cancelled before suit was brought. (2) Stutzman Feed Services, Inc. was not a proper party as the contract had been assigned to Satellite Mills Plant, Inc. (3) This contract was a construction contract and not a contract for the purchase of "goods, wares or merchandise" and therefore not within the purview of 15 U.S.C.A. § 13(c).

#### (1)

##### Capacity to Sue

Plaintiff's certificate of incorporation was cancelled November 22, 1968 by the Secretary of State for failure to file the annual corporation report. This action was filed December 14, 1970. The Motion for Summary Judgment was filed March 26, 1971. Application for reinstatement was made and on May 5, 1971

the Secretary of State issued a certificate of reinstatement.

Plaintiff takes the position the reinstatement relates back to the date of cancellation and it therefore has the capacity to prosecute this action. Defendant claims that as plaintiff had no capacity to prosecute an action under Sec. 496A.130 Code of Iowa when the action was filed, the action was improperly commenced even if the certificate of incorporation is subsequently reinstated.

This question is one primarily of statutory construction. We have found no Iowa cases interpreting the pertinent language of section 496A.130 which provides:

"The secretary of state may cancel the certificate of incorporation of any corporation that fails or refuses to file its annual report * * *.

"Upon the issuance of the certificate of cancellation, the corporate existence of the corporation shall terminate, subject to right of reinstatement as herein provided * * *. The cancellation of the certificate of incorporation of a corporation shall not take away or impair any remedy available to * * * such corporation * * * for any right or claim existing * * * prior to such cancellation, but no action or proceeding thereon may be prosecuted by such corporation until it shall have been reinstated. * * *"

The Court is of the opinion that the reinstatement of a corporate certificate relates back to the date of the issuance of the certificate of cancellation. The termination is subject to the right of reinstatement. The procedure for obtaining reinstatement makes repeated references to the date of the issuance of the certificate of cancellation. All past due annual reports must be filed and all past due fees and penalties must be paid.

It is also provided: "Upon the issuance of the certificate of reinstatement, the corporation shall be entitled to continue to act as a corporation for the unexpired portion of its corporate period as fixed by its articles of incorporation, * * *." The only exception is the right to use its original name if some other corporation has become entitled to use it while the certificate was cancelled.

The construction urged by defendants would leave a void in the corporate existence which would cast doubt on all business transacted while a corporate certificate was cancelled. The Court does not believe this was the intention of the legislature. The whole tenor of the applicable portions of the section is that reinstatement was intended to provide for uninterrupted corporate existence when the required reports had been filed and the fees and penalties paid.

■ I therefore hold that the reinstatement of the corporate certificate relates back to the date of the issuance of the certificate of cancellation and that plaintiff has the capacity to continue to prosecute the action filed during the period its certificate was cancelled. The Motion for Summary Judgment on this ground is therefore denied.

### (2)

### Proper Party in Interest

■ Defendant claims the contract for the construction of a feed mill facility was entered into February 14, 1963 with Satellite Plant, Inc. as assignee of Satellite Mills, Inc. In resistance plaintiff alleges the contract was reassigned to Satellite Mills, Inc. March 12, 1963. A supporting affidavit was filed. Parties are agreed in this state of the record this is not properly subject to a Motion for Summary Judgment. The Motion for Summary Judgment on this ground is denied.

### (3)

### Nature of the Contract

The third ground urged in defendants' Motion for Summary Judgment relates only to Count I. In Count I plaintiff seeks to recover damages for violation of 15 U.S.C.A. § 13(c) (Robinson-Patman Act) alleging defendant corporation

through defendant Warren Sargent paid defendant Jack Ping a $20,000 commission for obtaining a contract with plaintiff for the purchase of a feed mill and the construction of a feed mill facility while Ping, who organized plaintiff, was acting as its general manager. A default judgment has been entered against Ping and he is no longer involved in the lawsuit.

Defendant contends the contract was a construction contract, not a contract for the purchase of "goods, wares or merchandise", and therefore is not within the purview of 15 U.S.C.A. § 13(c).

Plaintiff does not contend construction contracts are covered by 15 U.S.C.A. § 13(c) but states a factual question is presented and therefore the case cannot be disposed of on a Motion for Summary Judgment. Clausen & Sons v. Theo. Hamm Brewing Co. (8th Cir., 1968), 395 F.2d 388; Ramsouer v. Midland Valley R. Company (8th Cir., 1943), 135 F.2d 101.

I agree with plaintiff.

Cases cited by defendant involve 15 U.S.C.A. § 13(a) which uses similar, but not identical language, ("commodities" is not used in 15 U.S.C.A. § 13(c)) have limited the coverage of the act to the purchase of tangible personal property. General Shale Products Corporation v. Struck Construction Co. (6th Cir., 1942), 132 F.2d 425; Gaylord Shops, Inc. v. Pittsburgh Miracle-Mile Town and Country Shopping Center, Inc. (W.D.Pa.1963), 219 F.Supp. 400; Tri-State Broadcasting Co. v. United Press International, Inc. (5th Cir., 1966), 369 F.2d 268; Syracuse Broadcasting Corporation v. Newhouse (2nd Cir., 1963), 319 F.2d 683.

There has been no attempt to distinguish the language in these two sections and if a distinction were made, 13(c), which does not include commodities, would have to be considered the more restrictive. Patman, Complete Guide to the Robinson-Patman Act (1963), page 33.

Both parties cite and rely on General Shale Products Corporation v. Struck Construction Co. (6th Cir., 1942), 132 F.2d 425. There defendant made a general bid for the construction of 59 building units (800 living rooms) in a government housing project. It was claimed they received a discriminatory price for 2,000,000 bricks for use in the construction. After pretrial hearing the district court dismissed the action. The Court was affirmed on the basis the 15 U.S.C.A. § 13(a) did not apply as "The agreement was not for a transfer of chattels or the sale of personal property, but was clearly a construction contract". p. 428.

The case stands for the proposition that a construction contract is not covered by the Robinson-Patman Price Discrimination Act, but is no authority for the proposition that defendant is entitled to a summary judgment here. The information obtained at the pretrial hearing brought about the dismissal. There is no way of ascertaining at this time whether a construction contract or a sales contract is involved. The evidence will disclose the predominant nature of the contract.

15 U.S.C.A. § 13(c) was involved in Rangen, Inc. v. Sterling Nelson & Sons (9th Cir., 1965), 351 F.2d 851, 862. The trial court found Rangen had paid the chief of the Idaho Fisheries Management a commission for influencing the state to buy Rangen's fish food. On appeal, one of Rangen's claims was that as Rangen mixed some ingredients (less than 50%) furnished by Idaho into the fish food it was a service contract rather than a sales contract. The circuit court agreed with the trial court that *under the facts* the transaction was a sale of fish food, not a contract for services.

As almost all service contracts involve some tangible personal property and as almost all sales of goods, wares and merchandise involve some services, the courts have looked to the dominant nature of the contract to determine wheth-

**420**

er the particular transactions are covered by the Robinson-Patman Act. Tri-State Broadcasting Co. v. United Press International Inc. (5th Cir., 1966), 369 F.2d 268, 270; Baum v. Investors Diversified Services, Inc. (7th Cir., 1969) 409 F.2d 872, 875; LaSalle Street Press, Inc. v. McCormick & Henderson, Inc. (D.C., 1968), 293 F.Supp. 1004, 1005; George W. Warner & Co. v. Black & Decker Mfg. Co. (D.C., 1959), 172 F. Supp. 221, 227.

■ This appears to be a practical approach to the applicability of the act to a particular contract. The dominant nature of the contract ordinarily cannot be ascertained without the presentation of evidence. At least, it appears to the court that the claim here cannot be disposed of on a Motion for Summary Judgment.

I find further support for my position in United States v. Detroit Sheet Metal & Roofing C Ass'n. (1953), 116 F.Supp. 81, 87. Defendant was indicted for violation of the Sherman Act. Defendant moved to dismiss the indictment claiming they did not engage in the sale of roofing materials but were solely in the business of the repair and construction of built-up roofing. The Court said:

"Whether defendants have or have not sold roofing materials so as to become subject to the strictures of the price-fixing doctrine is a matter for proof at the time of trial.  *  *  *

"*  *  *

"*  *  *  We are here concerned exclusively with the indictment and not what may be discovered by subsequent proceedings."

I, therefore, hold this action cannot be disposed of on a Motion for Summary Judgment as a fact question is presented as to whether the dominant aspect of the agreement was a construction or sales contract, the defendant's Motion for Summary Judgment is denied.