Edwin M. REID, doing business as College Book Exchange, Plaintiff-Appellant,

v.

HARPER & BROTHERS, Defendant-Appellee.

No. 217, Docket 23849.

United States Court of Appeals
Second Circuit.

Argued Jan. 18, 1956.
Decided July 30, 1956.

See, also, D.C., 17 F.R.D. 281.

Edgar Hills (of Campbell & Hills), New York City, Thurman Arnold, Norman Diamond (of Arnold, Fortas & Porter), Washington, D. C., Edward G. Harris (of Harris & Sell), Toledo, Ohio, for plaintiff-appellant.

Alexander S. Andrews, New York City (Horace S. Manges, Jacob F. Raskin, Ira M. Millstein, Weil, Gotshal & Manges, New York City, of counsel), for defendant-appellee.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Plaintiff, Edwin M. Reid, doing business as The College Book Exchange, brought this action under § 2(a) of the Clayton Act, as amended by the Robin-

son-Patman Act, 49 Stat. 1526, 15 U.S.C. A. § 13(a), alleging that defendant, Harper & Brothers, had violated the Act by charging him higher prices for its books than it charged his competitors, thereby rendering him unable to compete in the sale of Harper's books. Treble damages were sought pursuant to Section 4 of the Act, 15 U.S.C.A. § 15. He appeals from a judgment against him entered upon a jury verdict for the defendant and from the denial of his motion to set aside the verdict and grant a new trial.

Plaintiff is engaged in the sale of books in Toledo, Ohio. The defendant is a book publisher in New York City. During the ten year period from 1941 to 1950, plaintiff's total purchases from defendant amounted to $46,396.83, or approximately 3½% of his purchases from all publishers. The aggregate difference in prices charged plaintiff, as compared with those paid by plaintiff's alleged competitors, was claimed to be $4,101.57, or an average of $410.00 a year. Plaintiff alleged that he was in competition with eight firms that acted as defendant's wholesalers, distributing books for defendant in various locations throughout the United States. Harper & Brothers conceded that its prices to Reid were higher than to several of its other customers during the period in question. The defendant sought to justify this disparity, however, on the basis of differences in cost between its sales to Reid and its sales to the other named customers. The relevant section of the Act authorizing such a defense provides "That nothing contained [herein] * * * shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered * * *." 49 Stat. 1526, 15 U.S.C.A. § 13(a). Harper contended that the total difference between the prices it charged Reid and those that he would have paid if treated like the other purchasers amounted to $3,-211.00. It then introduced the testimony and report of an independent accountant in order to justify this differential. The accountant had prepared a detailed comparison between "billing, bookkeeping and shipping" costs on transactions with Reid and transactions with three of its largest jobbers. This cost study indicated a saving of $1,430.00 in dealings with the latter. In addition, the defendant testified to further cost savings, attributable to the purchasing patterns of the three jobbers and from the elimination of certain collection expenses incurred in dealing with plaintiff. These items were characterized as "intangible" during the trial. In addition to testimony concerning general production economies, there was evidence that the plaintiff, in contrast to the three jobbers, was on occasion dilatory in paying his bills.

The trial judge properly left to the determination of the jury, as questions of fact, whether plaintiff was in competition with the favored purchasers, whether plaintiff was the victim of discrimination, and whether the effect of such discrimination, if any, was to injure the plaintiff's ability to compete with the other purchasers. Only if the jury be considered to have answered each of these questions in the affirmative, do we reach the questions raised by this appeal which are concerned primarily with the cost justification defense. Plaintiff also claims reversible error because of an alleged prejudicial comment of the trial judge on the evidence.

In connection with the cost justification defense, plaintiff contends that the trial judge improperly charged the jury in three respects, which will be discussed *seriatim*.

*First*, plaintiff alleges that it was error for the court to permit the jury to consider the "intangible cost savings," claimed by defendant, incident to book production and to the collection of bills. Although price differentials ought to be justified by concrete and specific evidence of cost variances in dealing with

**422**

different purchasers, and not by conjectural accounting estimates alone, Automatic Canteen Co. v. F. T. C., 1953, 346 U.S. 61, 68, 73 S.Ct. 1017, 97 L.Ed. 1454, it was not error to allow the jury to consider this evidence. The trial court pointed out the failure of defendant to introduce precise data, and properly discounted the weight of this evidence by adverting to "these intangible elements" as being the proper subjects of consideration only "for what they are worth."

■ *Second,* plaintiff also alleges error in that part of the charge concerning the validity of the accounting procedure embodied in defendant's cost study. Since Harper had no relevant cost records for the period of 1941 to 1950, the accountant hired to prepare the study used figures for 1951, adjusted backwards on the basis of general salary rates published by the Commerce and Industry Association of New York. Although such an accounting method obviously lacks the full measure of desired precision, it appears to have been undertaken in good faith and to accord with the minimal requirements of sound accounting principles. Indeed, under the circumstances, it appears to have been the best available procedure. Both the courts and the Federal Trade Commission have recognized the dilemma confronting defendants in suits such as these, and have liberally accepted data derived from litigation-inspired accounting methods. See e. g., American Can Co. v. Russellville Canning Co., 8 Cir., 1951, 191 F.2d 38, 59, and In re Minneapolis Honeywell Regulator Co., 1948, 44 F.T.C. 351, 394. Moreover, the trial court correctly charged the jury that it was "up to you as to whether you wish to accept or reject the assumptions made by Gayle [defendant's accountant] and the conclusions which he drew from them."

A further contention of plaintiff is that the court erred in refusing to charge that defendant's cost study improperly calculated comparative costs for plaintiff and defendant's three largest jobbers, by averaging total shipments on a cumulative basis for an entire year. The complaint is that this approach uses savings realized on large transactions with the favored customers to justify discrimination in their favor on transactions involving smaller quantities, equivalent to plaintiff's purchases. To require a seller in these circumstances to justify the cost differential in each and every transaction with his buyers, rather than on the aggregate basis of their dealings, would prove unduly onerous. The impact of such a requirement might be to discourage *all* price differentials, even those actually justified by cost distinctions. Absent a showing that the lack of uniformity in the price spread had any competitive significance, the FTC has permitted the use of aggregate cost differences to justify price differentials. See, e. g., In re Sylvania Electric Products, Inc., 1954, FTC Docket No. 5728, 3 CCH Trade Reg. Rep. ¶ 25,181. Such a method was permissible in this case. Furthermore, the trial court left the ultimate validity of this computation to the determination of the jury.

*Third,* plaintiff alleges that the court erred in charging the jury that it could deduct *pro tanto* from the amount of damages, if any, the extent of saving resulting from the transactions with the favored customers. Although one court has approved this partial justification approach, see American Can Co. v. Russellville Canning Co., 8 Cir., 1951, 191 F.2d 38, 56, it is not necessary for us to consider its validity since the jury returned a verdict in favor of defendant and therefore never reached the question of the measure of damages.

■ With respect to the alleged prejudicial comment, the plaintiff claims that the trial court in his charge to the jury unduly emphasized a letter written by plaintiff to his creditors shortly after a fire had destroyed his office building. The letter indicated that plaintiff was unable to pay his debts at that time because all available cash, including insurance proceeds, was being used to convert the building into an apartment

house. The trial judge alluded to this letter in respect to its bearing on the plaintiff's credibility as a witness, since it contradicted his oral testimony. Plaintiff's testimony was an essential ingredient of his case, as evidenced by his appearance on the witness stand on five successive days, and it was not error for the court to advert to that evidence. Great discretion is accorded federal judges in commenting on portions of the evidence, and even in expressing opinions with regard thereto, provided it is stated that the jury is the exclusive judge of the facts and need not adopt any opinion expressed. Quercia v. United States, 1933, 289 U.S. 466, 469–470, 53 S.Ct. 698, 77 L.Ed. 1321; Pager v. Pennsylvania Rail Co., 2 Cir., 1947, 165 F.2d 56, 58; Flint v. Youngstown Sheet & Tube Co., 2 Cir., 1944, 143 F.2d 923, 925. These precautions were observed by the court. Furthermore, the trial judge properly informed the jury that the plaintiff's motive for bringing the action had absolutely no bearing on his rights under the Robinson-Patman Act, but was relevant only to the extent that it bore on his credibility as a witness.

Since the trial court did not err in its instructions to the jury, but rather left to it the determination of all issues of fact after proper instructions on the law, the judgment below must be affirmed.

Affirmed.