**FIRST COMICS, INC., Plaintiff,**

v.

**WORLD COLOR PRESS, INC., Defendant.**

**No. 84 C 1828.**

United States District Court, N.D. Illinois, E.D.

Sept. 18, 1987.

See also, 672 F.Supp. 1068.

Myron M. Cherry, Cherry & Flynn, Kenneth F. Levin, Chicago, Ill., for plaintiff.

Michael D. Freeborn, Freeborn & Peters, Roger B. Harris, Susan A. Henderson, Gary L. Specks, Altheimer & Gray, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

First Comics, Inc. ("First"), a publisher and creator of comic books, brings suit against World Color Press, Inc. ("World"), a printer. First claims that World engaged in discriminatory pricing—i.e., that World charged First more for printing comic books than it did others—even though World assured First that the fees were the same.

First alleges violations of the Robinson-Patman Act, 15 U.S.C. § 13; the Clayton Act, 15 U.S.C. § 15; the Illinois Uniform Deceptive Trade Practices Act ("DTPA"), Ill.Rev.Stat. ch. 121½ ¶¶ 311–17 (Supp. 1987); and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act" or "CFA"), Ill.Rev.Stat. ch. 121½ ¶¶ 261–272 (Supp.1987); and claims that World committed common law fraud. In a counterclaim, World seeks to recover printing fees, prepaid freight, and postage charges it says First never paid.

Before the court are World's motions for partial summary judgment on the Robinson-Patman and state statutory claims, and on the counterclaim. Jurisdiction is pursuant to 28 U.S.C. § 1337 and principles of pendent jurisdiction.

## DISCUSSION [1]

### 1. *The Robinson-Patman Act.*

The Robinson-Patman Act prohibits price discrimination between different purchasers of commodities of like grade and quality where the effect is anti-competitive. 15 U.S.C. § 13(a). World advances three arguments in support of its motion for summary judgment on this claim: (1) that the Robinson-Patman Act requires a sale to take place, and that it could not have sold the goods in question because it did not have title to them; (2) that the goods are not of like grade and quality; and (3) that the transactions at issue are not comparable. Each of these contentions is without merit.[2]

World's first argument is deceptively simple but totally erroneous. Relying on section 106(3) of the Copyright Act, 17 U.S.C. § 106(3), which gives the copyright owner the exclusive right to distribute copies of the copyrighted work, World claims that it could not have sold the goods in question because it did not have title to them. Yet nowhere does World assert that any sale illegal under the Copyright Act is *ipso facto* not a sale for purposes of the antitrust laws. It is undisputed that certain sales took place, and the Copyright Act specifically provides that it does not limit remedies available under any other federal statute. *See* 17 U.S.C. § 301(d).

Moreover, World underestimates the relevance of 17 U.S.C. § 202, which distinguishes the ownership of a copyright from the ownership of the material object in which the copyrighted work is embodied. While First may have a copyright in the comic strips as expressions, it does not have a proprietary right in the comic books. Judge Bua and Magistrate Sussman explicitly so held. *See* Report and Recommendation of Magistrate Carl B. Sussman at 9–10, Memorandum and Order of Judge Bua at 2–3. World's contention that the Copyright Act protects expressions rather than ideas, citing 17 U.S.C. § 102(b), is accurate but unpersuasive: in this case, the crucial distinction lies in the differences between the expressions and the comic books, not the expressions and the ideas.

World's second argument, that the goods are not of like grade and quality, is also weak. World attempts to distinguish the comic books at issue based on the authors, characters, stories, and illustrations. But World does not suggest that a different author or character increases the production cost of the comic book. World provided First and others with 32 four-color interior page letterpress comic books with 4 four-color covers, all of the same size and paper stock. World does not argue that First requested bigger or more pages or a different kind of paper. Accordingly, First's citations to cases involving goods manufactured according to producer specifications are irrelevant. *See, e.g., Ambook Enterprises v. Time, Inc.,* 612 F.2d 604 (2d Cir.1979); *Wire Mesh Products, Inc. v. Wire Belting Association,* 520 F.Supp. 1004 (E.D.Pa.1981).

Furthermore, the very test articulated by World convinces this court that the products involved may be of like grade and quality. World states that the relevant inquiry is whether *consumers* perceive the goods as comparable. In this case, the consumers are comic book publishers like First, not children buying comic books at newsstands. If First and its competitors perceive the type and quality of comic books described above as identical, this court must do the same. Summary judgment therefore is denied because World

---

**1.** Since these motions request partial summary judgment, all factual inferences are drawn in favor of the non-moving party.

**2.** The court does not address the question of whether World sold services or commodities to First, as this issue has not been presented by the parties.

has not shown as a matter of law that the goods in question are dissimilar.[3]

■ World's final argument under Count I can be summarily rejected. World argues that the transactions First compares in order to demonstrate price discrimination are too different for purposes of applying the Robinson-Patman Act. Specifically, it claims that its contracts with Marvel Comics ("Marvel") are long-term agreements with automatic yearly renewals, while its contracts with First were merely individual orders made on a one-shot basis. World never demonstrates, however, that long-term contracts are *per se* unlike spot orders under the Act. All the Act requires is that the transactions be made at approximately the same period of time, *see Texas Gulf Sulphur Company v. J.R. Simplot Company*, 418 F.2d 793, 806–07 (9th Cir. 1969), and World itself admits that it could have renegotiated its contract with Marvel during the time it was doing business with First. Moreover, at least one court has expressly declined to grant summary judgment in these circumstances because of a lack of authority on the subject. *See SDI Reading Concrete, Inc. v. Hilltop Basic Resources, Inc.*, 576 F.Supp. 525, 532 (S.D. Ohio 1983).[4]

Accordingly, World's motion for partial summary judgment on the Robinson-Patman Act claim is denied on all grounds.

### 2. *The State Statutory Claims.*

First's claims under the Illinois Uniform Deceptive Trade Practices Act, *supra*, and the Illinois Consumer Fraud Act, *supra*, are set out in Count III of the complaint. World seeks summary judgment on the grounds that (1) the DTPA provides only for injunctive relief and First's complaint seeks damages; and (2) First does not have standing to sue under the CFA because it

cannot show that consumers were injured by World's alleged acts.

■ Rule 54(c) of the Federal Rules of Civil Procedure states, with one exception not relevant here, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *See also*, 2A *Moore's Federal Practice*, ¶ 8.14 at 8–85 (1987). In this case, World cannot even claim that it would be surprised by an award of injunctive relief, because whenever a practice unlawful under § 2 of the DTPA is used in the conduct of trade or commerce, there is a violation of the CFA as well. *See* Ill.Rev.Stat. ch. 121½, ¶ 262 (Supp.1987). Thus, World's motion for summary judgment under the DTPA is denied.

World's argument on the CFA claim comprises three parts: first, it contends that First must be a consumer in order to sue; second and alternatively, if First is not a consumer, it must at least show consumer injury; and third, consumer injury should not be presumed. The court will address those contentions in the order given.

■ The Consumer Fraud Act clearly extends to businesses; First need not be an individual to bring a claim. *Jay's Foods, Inc. v. Frito-Lay, Inc.*, 664 F.Supp. 364 (N.D.Ill.1987). The question of whether First has to demonstrate consumer injury is more difficult, since Illinois courts have disagreed on the issue. *Id.* This court finds, however, that the consumer injury requirement usually is applied where the suit involves a private dispute between businessmen. *See, id.* and cases cited therein. First attempts to argue that this is more than a private dispute because of the antitrust claims, but its own pleadings demonstrate that the alleged CFA violation

---

**3.** World has not argued that any differences in prices charged to First and to others is due to a difference in the volume of comic books produced. Accordingly, the court expresses no opinion on this matter.

**4.** *Dealers Wholesale Supply v. Pacific Steel and Supply*, 1984–2 Trade Cas. (CCH) ¶ 66,109 (N.D. Cal.1984) [Available on WESTLAW, DCT data-

base], which held that sales separated by over five months were insufficiently alike, is distinguishable. The court noted the lack of evidence on the issue and stated that the evidence that was submitted was "badly flawed." In addition, the court did not rule that sales separated by more than five months were *per se* incomparable. *Id.* at 66,204.

# 1068

is premised on common law fraud rather than federal antitrust statutes. *See* complaint, ¶¶ 167–68; plaintiff's proposed jury instruction No. 36. Even if the antitrust allegations were stated under the CFA claim, First would have trouble, for this is still a suit between businessmen. *Fitzgerald v. Chicago Title & Trust Company*, 46 Ill.App.3d 526, 5 Ill.Dec. 94, 361 N.E.2d 94 (1st Dist.1977), *aff'd*, 72 Ill.2d 179, 20 Ill. Dec. 581, 380 N.E.2d 790 (1978), does not compel a different result because the court in that case did not discuss the public injury requirement. It did not need to do so because the suit was brought by a class of individual plaintiffs. *Id.* at 526–27, 5 Ill. Dec. 94, 36 N.E.2d 94.

First has not pleaded a consumer injury, nor has it submitted any evidence of one. The court refuses to presume a consumer fraud injury because it would be contrary to Illinois law and because First has not submitted any evidence suggesting that World's allegedly higher prices were in fact passed on to consumers at the newsstand. *See Jay's Foods, supra* at 368 (court refused to presume consumer injury based on allegedly improper allocation of shelf space between competing suppliers). Accordingly, World's motion for partial summary judgment on the Consumer Fraud Act claim is granted.[5]

### 3. *World's Counterclaim.*

 World's motion for summary judgment on its counterclaim is denied. World seeks to recover printing fees and prepaid freight and postage charges it claims First owes. First concedes that it was billed for the money, that it has not paid those bills, and that it customarily paid freight and postage charges and printing fees. *See* Plaintiff's Answer to Counterclaims of World Color Press, Inc., ¶¶ 5–8. First claims, however, that the bills are incorrect and that the money is not due and owing. While a party opposing a motion for summary judgment ordinarily must go beyond his pleadings, *see Celotex Corporation v.*

*Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), we note that the burden on this counterclaim is on World, the movant. Accordingly, the court finds an issue of material fact and does not address the sufficiency of First's defenses to the counterclaim.

### CONCLUSION

Defendant's motion for partial summary judgment is denied as to the Robinson-Patman Act claim, the Illinois Uniform Deceptive Trade Practices Act claim, and the counterclaim. The motion is granted as to the claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

---

**5.** The parties have not addressed whether the Deceptive Trade Practices Act claim can survive dismissal of the Consumer Fraud Act claim, thus the court expresses no opinion on the issue at this time.