**FIRST COMICS INC., Plaintiff,**

v.

**WORLD COLOR PRESS, Defendant.**

**No. 84 C 1828.**

United States District Court,
N.D. Illinois, E.D.

Oct. 28, 1987.

---

See also, 672 F.Supp. 1064.

Myron M. Cherry, Cherry & Flynn, Kenneth F. Levin, Chicago, Ill., for plaintiff.

Michael D. Freeborn, Freeborn & Peters, Roger B. Harris, Susan A. Henderson, Gary L. Specks, Altheimer & Gray, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This suit between First Comics, Inc. ("First") and World Color Press, Inc. ("World") is based on the Robinson–Patman Act, 15 U.S.C. § 13(a), and pendent state claims. Before the court are World's motion for a directed verdict and First's cross-motions for certain directed findings.

At conferences on October 14–15, 1987, this court denied World's motion but granted some of the directed findings that First requested. This opinion will supplement those oral rulings.

I. *Motion for a Directed Finding on the Dominant Nature of the Transaction.*

■ By its terms, the Robinson–Patman Act applies only to sales of "commodities." 15 U.S.C. § 13(a). Commodities, at least in this circuit, are "goods, wares, merchandise, machinery and supplies...." *Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc.*, 295 F.2d 375, 378 (7th Cir.1961). When a transaction involves both the transfer of a commodity and the performance of a service, courts have looked to the "dominant nature" of the

transaction in order to determine whether the Robinson–Patman Act applies. *Aviation Specialties, Inc. v. United Technologies Corporation*, 568 F.2d 1186, 1191 (5th Cir.1978); *Baum v. Investors Diversified Services, Inc.*, 409 F.2d 872, 875 (7th Cir. 1969).

In this case, it is undisputed that First develops an illustrated story and sends it to a company that produces color separations from which the comic books will be printed. World then receives the color separations and manufactures comic books, supplying ink, paper, staples, and other physical materials as needed. At that point, and at no time prior thereto, a saleable item is produced.[1]

The majority of Robinson–Patman cases dealing with the service versus commodity issue have treated it as a matter of law. *See, e.g., Aviation Specialties, supra; Baum, supra; Columbia Broadcasting, supra; but see May Department Store v. Graphic Process Company*, 637 F.2d 1211 (9th Cir.1980). It is helpful to look to those cases to determine the dominant nature of the transaction between First and World.

Where the tangible good produced in a hybrid transaction is merely incidental to the services performed, courts have held that the dominant nature of the exchange was for a service. *See Freeman v. Chicago Title & Trust Company*, 505 F.2d 527, 531 (7th Cir.1974) (issuance of title insurance certificate); *Advanced Office Systems, Inc. v. Accounting Systems Company, Inc.*, 442 F.Supp. 418, 421 (D.S.C.1977) (preparation of billing statements). Conversely, a number of older decisions, without applying the dominant nature test, have held that printers such as World are subject to the Robinson-Patman Act. *See Reid v. Harper & Brothers*, 235 F.2d 420 (2d Cir.1956); *In the Matter of Doubleday and Company*, 52 F.T.C. 169 (1955). The

Eighth Circuit has followed the dominant nature test and ruled that a newspaper is a commodity, but only in dicta. *The Morning Pioneer, Inc. v. The Bismarck Tribune Company*, 493 F.2d 383, 389 n. 11 (8th Cir.1974).

Even without relying on the latter cases, this court is comfortable in ruling that comic books are commodities. The comic books generated as a result of the transactions between First and World are anything but incidental: they are the very point of the exchanges. Moreover, instead of merely working with the raw expressions provided by First, World adds tangible materials to those expressions such that there is a value added to the item in the production chain. Finally, once World contributes materials and labor to the expressions, the production chain ends and a consumable item results. *Compare May Department Store, supra* (defendant created an input from which the consumable item, a newspaper advertisement, was produced).

World attempts to argue that a two-page contract between it and First, and the testimony of several witnesses, show that there are disputed issues of fact on this question. At least one court has already opined, however, that the parties' beliefs as to whether a transaction involves a commodity or a service are not controlling. *See Wise & Company v. Rand McNally*, 195 F.Supp. 621, 626 n. 5 (S.D.N.Y.1961). And a motion for summary judgment (and likewise, for a directed verdict) cannot be defeated by any factual issue, no matter how small. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

*General Shale Products Corporation v. Struck Construction Company*, 132 F.2d 425 (6th Cir.1942), is not to the contrary. In that decision, the Sixth Circuit ruled that

---

**1.** In December, 1984, Judge Bua reversed Magistrate Sussman's ruling that a newspaper was a commodity as a matter of law, finding that there were factual issues involved. It is appropriate to re-examine that ruling, however, because three years' worth of discovery has transpired since then. *See Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 597 (7th Cir.1987) (law of the case is a discretionary doctrine that may be modified as a matter of common sense).

an agreement to build housing facilities was a contract for services rather than the sale of a commodity. But a house is not a commodity, it is a piece of real estate. It does not "move" in commerce. *General Shale* therefore is not controlling.

## II. *Motion for a Directed Finding on the Like Grade and Quality Issue.*

█ In order to invoke the Robinson–Patman Act, a plaintiff also must show that the commodities at issue are so alike that their prices should be the same. In legal terms, the commodities must be "of like grade and quality." 15 U.S.C. § 13(a). The parties agree that the consumers' perspective controls in determining whether this test is met.

As this court has already explained at length in a prior opinion, *see First Comics, Inc. v. World Color Press, Inc.*, 672 F.Supp. 1064, 1066 (1987), the consumers for purposes of this issue are comic book publishers like First. They pay for 32 four-color interior page letterpress comic books. World's argument, in essence, is that the comic books are different because they sell for different prices at the newsstands. But such a distinction between standard and premium versions of the same item has been outlawed by the court in *Checker Motors Corporation v. Chrysler Corporation*, 283 F.Supp. 876, 889 (S.D.N.Y.1968), *aff'd on other grounds*, 405 F.2d 319 (2d Cir.1969). It also would eviscerate the very purpose of the Robinson–Patman Act.

Defendant's citation of *The Morning Pioneer, Inc. v. The Bismarck Tribune Co.*, 342 F.Supp. 1138 (D.N.D.1972), *aff'd*, 493 F.2d 383 (8th Cir.1974), is unpersuasive. In that case, the court distinguished between newspapers that were delivered at different times, contained varying amounts of local news, and had advertisements that pertained to events in particular areas, *id.* at 1141, because those variables affected the value of the newspaper to the consum-er. Here the values of the comic books provided to First and its competitors, at least insofar as they contain work performed by World, are identical. It makes no difference for the purposes of this evaluation that the comic books contain copyrighted materials which can be sold only by the copyright holder. *See* Memorandum Opinion of Sept. 18, 1987, *supra* at 1066.

The parties have not raised any disputed issues of material fact. Accordingly, a directed finding is granted in favor of First on the issue of like grade and quality.

## III. *Motion for a Directed Finding on the Issue of Competitive Injury.*

█ First also requested this court to hold, as a matter of law, that World's actions caused an injury to competition. In *Falls City Industries, Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435–36, 103 S.Ct. 1282, 1288–89, 75 L.Ed.2d 174 (1983), the Supreme Court held that injury to competition could be inferred from proof of a substantial, sustained price discrimination, but that this inference could be overcome in the absence of direct evidence that sales had been displaced. *See also, Richard Short Oil Co., Inc. v. Texaco, Inc.*, 799 F.2d 415, 420 (8th Cir.1986); *Foremost Pro Color, Inc. v. Eastman Kodak Company*, 703 F.2d 534, 548 (9th Cir.1983); *The American Oil Company v. Federal Trade Commission*, 325 F.2d 101, 104 (7th Cir.1963). The parties agree that plaintiff has not submitted any such direct evidence in this case.

The evidence at trial showed that over a period of approximately eighteen months, World charged one price to First and other small publishers, and a lower price to the larger, more established companies. The amount of this price difference, however, is contested. First claims it has shown price differences of at least 50%, citing Mr. Obadiah's testimony, while World insists that the differences may be as little as one cent per copy, or less than 10%, by relying on the testimony of Dr. Pisarkiewicz. Even if a substantial, sustained price difference

was shown, World has demonstrated that those differences may not have been reflected in prices charged at the retail level, and hence, may have had no effect on competition whatsoever. *See* testimony of Mr. Geppi. Accordingly, First's motion for a directed finding on this issue must be denied.

## CONCLUSION

World's motion for a directed verdict on First's complaint is denied. First's motions for directed findings on the dominant nature of the transaction and on the like grade and quality issues are granted. First's motion for a directed finding of competitive injury is denied.