**TV SIGNAL COMPANY OF ABERDEEN, Plaintiff-Appellant,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY and Northwestern Bell Telephone Company, Defendants-Appellees.**

**No. 71-1426.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1972.

Decided June 30, 1972.

**1258**

Burt A. Braverman, Alan Raywid, Cole, Zylstra & Raywid, Washington, D. C., for plaintiff-appellant.

John D. French, Minneapolis, Minn., Harold C. Doyle, May, Boe & Johnson, Sioux Falls, S. D., Duane W. Krohnke, Faegre & Benson, Minneapolis, Minn., for defendants-appellees.

Before BREITENSTEIN,* BRIGHT, and STEPHENSON, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a private antitrust suit to recover treble damages for alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and § 2 of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13. On motion of defendants-appellees, the district court, 324 F.Supp. 725, dismissed the action on the ground that the amended complaint failed to state a claim on which relief could be granted. This appeal followed.

■ The motion to dismiss, filed under Rule 12(b) (6), F.R.Civ.P., had no supporting materials and plaintiff-appellant presented nothing in opposition. Accordingly, the issues must be resolved on the allegations of the amended complaint. Dismissal for insufficiency of the complaint is proper only in "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." Lewis v. Chrysler Motors Corporation, 8 Cir., 456 F.2d 605, 607, and cases there cited.

We turn to the amended complaint. Plaintiff TV Signal Company of Aberdeen (Signal) is solely engaged in providing community antenna television (CATV) service in Aberdeen, South Dakota, under a franchise from that city. Defendant Northwestern Bell Telephone Company (Northwestern) is an operating telephone company providing telephone service in Aberdeen. Northwestern is a wholly owned subsidiary of defendant American Telephone and Telegraph Company (AT&T).

CATV provides improved television reception by retransmitting selected local and distant broadcast signals to the homes of subscribers by a network of coaxial broadband cable. This cable permits the simultaneous transmission of a great number of different signals and has a variety of uses in addition to CATV. See United States v. Midwest Video Corporation, 406 U.S. 649, 92 S. Ct. 1860, 1862, 32 L.Ed.2d 390. These uses include data transmission, processing, and retrieval; meter reading; burglar and fire alarm signals; stock market quotations and the placing of buy and sell orders; high speed facsimile re-

---

production of publications; computerized inventory control; and "at home" shopping. The cable is generally strung "on existing telephone poles or the poles of electric utility companies."

CATV operators normally use telephone poles under a "pole attachment" agreement or a "lease-back" arrangement. Lease-back service is not the equivalent of a pole attachment agreement. In Aberdeen, Northwestern had made a pole attachment agreement with an unfranchised CATV operator. Signal requested a similar agreement but Northwestern refused because of "the joint policy of both Defendants which permits grant of only one pole attachment agreement." Northwestern offered a restricted lease-back service to Signal but Signal rejected the offer "as an unacceptable alternative to a pole attachment agreement." Because of defendants' actions Signal has installed its cable facilities underground at a greater cost than if the cable had been strung on telephone poles.

The allegations relating to the offenses charged will be discussed in connection with the pertinent antitrust statutory provisions. The effect of the offenses charged is alleged to be the reduction, and threatened destruction, of competition contrary to the public interest; the construction by Signal of underground facilities at an increased cost; delay in Signal's start of CATV service; loss of goodwill by Signal; and extension of the telephone monopoly into the CATV business. The extent of injury is alleged to be presently indeterminable and Signal asks leave to amend after the amount of damage has been ascertained.

■ We consider first the sufficiency of the claim under the Robinson-Patman Act, the pertinent provision of which forbids price discrimination "between different purchasers of commodities of like grade and quality." 15 U.S. C. § 13(a). The trial court held that space on a telephone pole was not a commodity within the purview of the Act. We agree. The term commodity is "re-stricted to products, merchandise or other tangible goods." Baum v. Investors Diversified Services, Inc., 7 Cir., 409 F. 2d 872, 874–875. Although the nature of an agreement for pole space or for a pole attachment is not precisely described in the pleadings, it is more akin to a real estate transaction than anything else. As such it is not a commodity within Robinson-Patman. Export Liquor Sales, Inc. v. Ammex Warehouse Company, 6 Cir., 426 F.2d 251, 252, cert. denied 400 U.S. 1000, 91 S.Ct. 460, 27 L.Ed.2d 451. We conclude that the allegations of the amended complaint fail to state a claim under Robinson-Patman.

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, is violated when two or more entities contract, combine, or conspire to unreasonably restrain trade or commerce. Northern Pacific Railway Co. v. United States, 356 U.S. 1, 4–5, 78 S.Ct. 514, 2 L.Ed. 545. In rejecting the Sherman Act claim, the district court commented that there was no allegation that Signal could not have strung its cable on electric utility poles or could not have set up poles of its own. In our opinion alternative methods of cable installation are an affirmative defense and not integral part of plaintiff's claim. See 5 Fed.Pract. & Proc. § 1276, pp. 326–327, and Associated Press v. United States, 326 U.S. 1, 17–18, 65 S.Ct. 1416, 89 L.Ed. 2013.

■ The trial court also said that the complaint was deficient because of the lack of an allegation that AT&T knew of Signal's request to Northwestern for a pole attachment agreement. The key element of a § 1 violation is "unity of purpose or a common design and understanding." Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 213–214, 71 S.Ct. 259, 261, 95 L.Ed. 219. Although knowledge is implicit in the requirement of unity of purpose, no case of which we are aware requires that each party to a conspiracy knows of each transaction encompassed by the conspiracy in order to be held accountable therefor. The complaint alleged that

defendants knowingly participated in a common scheme or purpose to hamper CATV operators including plaintiff and that Signal's request for a pole attachment agreement was denied on the basis of such policy. We believe that this is enough to satisfy any knowledge requirement of § 1.

■ Although the point was not relied upon by the district court, defendants now argue that a parent, AT&T, and a wholly owned subsidiary, Northwestern, which are not competitors or in a buyer-seller relationship, cannot be guilty of an antitrust conspiracy. The Supreme Court has said that "common ownership and control does not liberate corporations from the impact of the antitrust laws." Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211 at 215, 71 S.Ct. 259 at 261. Although the extent of the intracorporate conspiracy doctrine has not yet been delineated, common ownership is not a per se defense. See Perma Life Mufflers, Inc. v. International Parts Corp., 392 U. S. 134, 141–142, 88 S.Ct. 1981, 20 L.Ed. 2d 982; and Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke and Liquors, Ltd., 9 Cir., 416 F.2d 71, 82–83.

It may be, as defendants argue, that the intracorporate conspiracy doctrine should be limited to competitors or to a buyer-seller relationship but we know of no Supreme Court decision which has so held. The Seventh Circuit has rejected the limitation. See United States v. General Motors Corporation, 7 Cir., 121 F.2d 376, 404, cert. denied 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (a vertical conspiracy), and Tamaron Distributing Corporation v. Weiner, 7 Cir., 418 F.2d 137, 139 (conspiracy between manufacturer and noncompetitive agent).

■ Whether the intracorporate conspiracy doctrine should be limited in this case is a substantial question which should be explored and assayed in the light of actual facts and not determined on the allegations of the complaint. Shull v. Pilot Life Insurance Company, 5 Cir., 313 F.2d 445, 447. We believe that the complaint sufficiently states a claim under § 1 of the Sherman Act.

Section 2 of the Sherman Act, 15 U. S.C. § 2, proscribes monopolies, attempts to monopolize, and conspiracies to monopolize any part of the trade or commerce of the United States. The district court rejected the § 2 claim and said that the complaint failed to allege that either of the defendants had any competitive interest in the CATV business of the plaintiff.

■ Section 2 is aimed at "the acquisition or retention of effective market control." United States v. Griffith, 334 U.S. 100, 107, 68 S.Ct. 941, 945, 92 L.Ed. 1236. The relevant market is the area of "effective competition" within which the parties operate. See Standard Oil Company of California v. United States, 337 U.S. 293, 299–300, n. 5, 69 S.Ct. 1051, 93 L.Ed. 1371. The complaint charges that defendants "have effectively extended their telephone monopoly into the business of providing CATV distribution facilities by broadband coaxial cable."

The complaint avers that Signal is presently engaged only in the transmission of TV signals but it goes on and alleges the potential of the broadband cable for a variety of communication purposes. Admittedly, defendants are not engaged in CATV operations. The point is that the broadband cable has the potential for other uses. Recognition by defendants of this fact is implicit in the allegation that defendants would grant a lease-back agreement with limited cable use.

CATV is "one important gateway to entering the broadband market." General Telephone Company of the Southwest v. United States, 5 Cir., 449 F.2d 846, 857. The dangers of monopolization have been recognized by the Federal Communications Commission which has said, as quoted ibid. at 851:

"* * * by reason of their control over utility poles or conduits, the telephone companies were in a position to preclude or substantially delay

an unaffiliated CATV system from commencing service and thereby eliminate competition."

In Export Liquor Sales, Inc. v. Ammex Warehouse Company, 6 Cir., 426 F. 2d 251, 252–253, cert. denied 400 U.S. 1000, 91 S.Ct. 460, 27 L.Ed.2d 451, it was held that no Sherman Act violation occurred when a tunnel company gave an exclusive contract for the operation of a liquor business on its premises. The decision was bottomed on the terminal cases, e. g. Donovan v. Pennsylvania Co., 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192, which upheld the right of a railroad terminal to make an exclusive arrangement with one taxi company to use its premises. In those cases the tunnel and terminal operators were not competitors of the excluded party. In the case at bar Signal and the telephone companies are all in the communications business. See e. g. American Trucking Associations, Inc. v. Federal Communications Commission, 126 U.S.App.D.C. 236, 377 F.2d 121, cert. denied 386 U.S. 943, 87 S.Ct. 973, 17 L.Ed.2d 874. The threat of potential competition is sufficiently alleged.

Monopoly power is "the power to control prices or exclude competition." United States v. Grinnell Corp., 384 U.S. 563, 571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778. When monopoly power has been shown to exist, intent to use the power may be assumed. United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377, 392, 76 S.Ct. 994, 100 L.Ed. 1264. The monopoly which defendants have in the field of telephone communications cannot be used to foreclose competition in the broadband cable field. See United States v. Griffith, 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236. An attempt to monopolize is established when there is a "dangerous probability" of monopolization if the attempt is successful. Hiland Dairy, Inc. v. Kroger Company, 8 Cir., 402 F.2d 968, 974, cert. denied 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748.

The amended complaint alleges that defendants have attempted to extend and "have effectively extended their telephone monopoly into the business of providing CATV distribution facilities by broadband coaxial cable." This is enough, when coupled with the other allegations, to state a claim under § 2 of the Sherman Act.

In our opinion the complaint states sufficient facts to constitute a claim under both §§ 1 and 2 of the Sherman Act and does not show on its face any insuperable bar to relief. Accordingly, it should not have been dismissed. Lewis v. Chrysler Motors Corporation, 8 Cir., 456 F.2d 605.

Reversed and remanded for further proceedings in the light of this opinion.