**LOCKHEED MARTIN CORPORATION,**
Plaintiff,

v.

**The BOEING COMPANY, McDonnell Douglas Corporation, Boeing Launch Services, Inc., William Erskine, Kenneth Branch, and Larry Satchell, Defendants.**

No. 6:03–cv–796–Orl–28KRS.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 15, 2005.

Kevin K. Ross, Michael V. Elsberry, Terry C. Young, Richard S. Dellinger, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, FL, Michael F. Mason, Peter S. Spivack, Thomas L. McGovern, III, Hogan & Hartson L.L.P., Raymond A. Jacobsen, Jr., McDermott, Will & Emery, Washington, DC, Nathaniel H. Akerman, Dorsey & Whitney, New York, NY, Terrence P. McMahon, McDermott, Will & Emery, Palo Alto, CA, for Plaintiff.

Brad D. Brian, Dennis C. Brown, Gregory D. Phillips, Marc A. Becker, Richard E. Drooyan, Ronald K. Meyer, Munger, Tolles & Olson LLP, Michael W. Fitzgerald, Robert L. Corbin, Sara Pfrommer, Corbin & Fitzgerald, LLP, Los Angeles, CA, David B. King, Mayanne Downs, Thomas A. Zehnder, King, Blackwell & Downs, P.A., Darryl M. Bloodworth, Nichole M. Mooney, Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, FL, Kara M. Sacilotto, Benjamin S. Sharp, Perkins Coie LLP, Scott M. McCaleb, William J. Colwell, Wiley, Rein & Fielding, L.L.P., Washington, DC, Kristin Linsley Myles, Munger, Tolles & Olson, San Francisco, CA, Gerry S. Gibson, Traci H. Rollins, Steel, Hector & Davis, LLP, West Palm Beach, FL, Thomas J. Pilacek, Thomas J. Pilacek & Associates, Winter Springs, FL, for Defendants.

Jay M. Cohen, Jay M. Cohen, P.A., Winter Park, FL, pro se.

## ORDER

ANTOON, District Judge.

On April 23, 2004, the Court dismissed Counts V–VIII of Plaintiff Lockheed Martin Corporation's ("Lockheed Martin") original Complaint alleging that Defendant The Boeing Company ("Boeing") attempted and conspired to monopolize in violation of federal and state antitrust laws. Lockheed Martin has since filed an Amended and Supplemental Complaint ("Amended Complaint") (Doc. 233) against Boeing and its wholly owned subsidiaries, the McDonnell Douglas Corporation and Boeing Launch Services, Inc., alleging, among other things, that Boeing attempted to, or did, monopolize in violation of § 2 of the Sherman Act and the Florida Antitrust Act (Counts XXI–XXIV). Additionally, Lockheed Martin's Amended Complaint alleges that Boeing conspired with Kenneth Branch, Richard Hora, and Allen Cantu, Inc. ("Allen Cantu") to monopolize in violation of § 2 of the Sherman Act and the Florida Antitrust Act and conspired to restrain trade in violation of § 1 of the Sherman Act and the Florida Antitrust Act (Counts XXV–XXVIII). Boeing and its wholly owned subsidiaries (collectively "Defendants") have filed a motion to dismiss all counts within Lockheed Martin's Amended Complaint which allege antitrust violations (Counts XXI–XXVIII) (Doc. 286).[1] For the reasons set forth below,

---

1. Defendants' motion to dismiss was pled in the alternative to their motion for summary judgment as to the same counts. This Court denied Defendants' motion for summary judgment as premature on December 1, 2004. (Doc. 578). In addition to their motion to dismiss Lockheed Martin's antitrust claims, Defendants have also filed a motion to dismiss Counts I–VI of Lockheed Martin's Amended Complaint, which allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Florida Civil Remedies for Criminal Activities Act (collec-

Defendants' motion to dismiss is denied in part and granted in part.

## I. Background

Lockheed Martin, in essence, alleges that Boeing used Lockheed Martin trade secrets to gain, or nearly gain, monopoly power in the market to perform satellite launch services for the United States Government ("Government").[2] The following facts are taken as true for the purpose of ruling on Defendants' motion to dismiss.

Between 1996 and 1998, Boeing and Lockheed Martin competed for contracts to perform launch missions for the United States Air Force's ("Air Force") Evolved Expendable Launch Vehicle ("EELV") Program. The Air Force awarded the contracts on a firm fixed-price basis, requiring contractors to assume maximum risk and full responsibility for launch missions. Of the twenty-eight EELV launch contracts that the Air Force initially awarded, Boeing received nineteen and Lockheed Martin received nine.

Lockheed Martin contends that, after its success in the 1998 EELV competition, Boeing acquired, or nearly acquired, monopoly power in the market for providing satellite launch services for the Government. Lockheed Martin maintains that, as a result, Boeing secured an order in 2002 to perform nineteen launch service missions (the "19–Pack") for the National Aeronautics and Space Administration ("NASA").[3] As additional evidence of Boeing's market power, Lockheed Martin al-leges that, from 1998 to 2003, Boeing received 84% of the Government's launch contracts, 100% of the Government's West Coast and heavy-lift launch contracts, and 29 out of 31 launch contracts awarded by NASA.

According to Lockheed Martin, Boeing achieved its superior market position by using Lockheed Martin trade secrets and other Lockheed Martin confidential and proprietary information which it obtained from Kenneth Branch ("Branch"), Richard Hora ("Hora"), and Allen Cantu. Hora and Branch are both former Boeing employees who, prior to their employment with Boeing, had been employed by Lockheed Martin. Allen Cantu is an engineering consulting firm that, at some point prior to 1998, was contracted to serve as "oversight officials" for one of Lockheed Martin's launch pads. According to Lockheed Martin, all three of Boeing's alleged coconspirators disclosed Lockheed Martin confidential and proprietary information to Boeing prior to the 1998 EELV competition. In addition, Branch and Hora, during the course of their employment with Boeing, continued to utilize or divulge Lockheed Martin confidential and proprietary information for Boeing's benefit.[4]

## II. Standard for Motion to Dismiss for Failure to State a Claim

To warrant dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts

---

tively "racketeering claims"). (Doc. 289). This Court will address Defendants' motion to dismiss Lockheed Martin's racketeering claims in a separate order.

**2.** For the purpose of their motion to dismiss, Defendants do not dispute Lockheed Martin's assertion that there is a market for performing satellite launch services specifically for the Government.

**3.** NASA awarded its 19–Pack order on a sole-source basis; Lockheed Martin, thus, did not have an opportunity to bid for the order.

**4.** A more elaborate recitation of the facts is contained in this Court's April 23, 2004 Memorandum and Order denying a prior motion to dismiss by Defendants Boeing, William Erskine, Kenneth Branch, and Larry Satchell. Doc. 207, Memorandum and Order, April 23, 2004, *Lockheed Martin Corp. v. Boeing Co.*, 314 F.Supp.2d 1198 (M.D.Fla.2004).

that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In determining whether to grant a motion to dismiss, a court must accept all the factual allegations in the complaint as true and consider all reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir.1994); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir.1994). "Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases." *Covad Communications Co. v. BellSouth Corp.*, 299 F.3d 1272, 1279 (11th Cir.2002).

### III. Legal Discussion

Section 2 of the Sherman Antitrust Act "proscribes monopolies, attempts to monopolize, and conspiracies to monopolize any part of the trade or commerce of the United States." *TV Signal Co. v. Am. Tel. & Tel. Co.*, 462 F.2d 1256, 1260 (8th Cir. 1972); 15 U.S.C. § 2 (2004). Section 1 of the Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade."[5] 15 U.S.C. § 1 (2004). Lockheed Martin has alleged that Boeing conspired to, attempted to, or did, monopolize certain markets for satellite launch services in violation of Section 2 and conspired to restrain trade in violation of Section 1. Defendants argue, with regard to Lockheed Martin's monopolization and attempted monopolization claims under Section 2, that Lockheed Martin's Amended Complaint should be

dismissed because it fails to sufficiently allege that Boeing possessed or ever could have possessed monopoly power or that Boeing's alleged conduct resulted in antitrust injury. Additionally, Defendants submit that Lockheed Martin's conspiracy claims under Sections 1 and 2 should be dismissed because they fail to allege that Boeing's coconspirators were divergent sources of economic power.

### A. Lockheed Martin's Claims of Monopolization and Attempted Monopolization

▆▆▆ Lockheed Martin alleges that Boeing attempted to monopolize or did monopolize the following markets: 1) the general satellite launch services market for Government customers ("Government launch services market"); 2) the West Coast launch services market for Government customers; and 3) the heavy-lift launch services market for Government customers. "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Levine v. Cent. Fla. Med. Affiliates*, 72 F.3d 1538, 1555 (11th Cir.1996) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). An attempted monopolization claim, on the other hand, requires a showing that the defendant: 1) engaged in predatory or anticompetitive conduct; 2) specifically intended to monop-

---

**5.** "[T]he Florida legislature has, in effect, adopted as the law of Florida the body of antitrust law developed by the federal courts under the Sherman Act." *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 n. 11 (11th Cir.1998) ("Federal and Florida antitrust laws are ana-

lyzed under the same rules and case law."). Thus, discussion as to the merits of Lockheed Martin's claims under the Sherman Act applies with equal force to Lockheed Martin's corresponding claims under the Florida Antitrust Act.

olize; and 3) that there was a dangerous probability of the defendant achieving monopoly power. *Spectrum Sports v. McQuillan,* 506 U.S. 447, 447, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). Defendants' motion focuses on the first element of Lockheed Martin's monopolization claim and the third element of its attempted monopolization claim—that is, whether Boeing possessed monopoly power or came dangerously close to possessing monopoly power.

Monopoly power is the power "to raise prices to supra-competitive levels or ... to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market." *Levine,* 72 F.3d at 1555 (citations omitted). While both circumstantial and direct evidence may be employed to prove monopoly power, the "most direct method" of proof, "demand and supply curves" (or cross-elasticity of demand), "is difficult to establish with accuracy." *Bailey v. Allgas, Inc.,* 284 F.3d 1237, 1246 (11th Cir.2002). For this reason, courts frequently look to circumstantial proof, in the form of market share, as a "proxy" for monopoly power. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.,* 185 F.3d 606, 622 (6th Cir.1999); *see also Bailey,* 284 F.3d at 1246 ("[E]vidence of a seller's market share may provide the most convenient circumstantial measure of monopoly power.").

The first step in assessing a seller's market share is to define the relevant [product] market. *Bailey,* 284 F.3d at 1246. The relevant product market is the market that the defendant is allegedly seeking to monopolize. *Grinnell,* 384 U.S. at 571, 86 S.Ct. 1698. The "outer boundaries" of a product's market are defined by the "reasonable interchangeability of use ... between the product itself and substitutes for it." *U.S. Anchor Mfg., Inc. v.*

*Rule Indus., Inc.,* 7 F.3d 986, 995 (11th Cir.1993) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)).

After the relevant market is defined, the next step is to ascertain the percentage of the defendant's share of the market and evaluate its significance relative to "the setting in which [it] is placed." *Associated Radio Serv. Co. v. Page Airways, Inc.,* 624 F.2d 1342, 1357 (5th Cir. 1980) (quoting *United States v. Columbia Steel Co.,* 334 U.S. 495, 528, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948)). A high percentage of market share alone does not necessarily indicate monopoly power but is, rather, "only a starting point for determining whether monopoly power exists." *Am. Council of Certified Podiatric Physicians & Surgeons,* 185 F.3d at 623; *see also U.S. Anchor Mfg.,* 7 F.3d at 999 (cautioning courts to be "wary of the numbers game of market percentage"). The ultimate determination of monopoly power also rests on "factors[ ] such as barriers to entry into the market." *Lockheed Martin Corp. v. Boeing Co.,* 314 F.Supp.2d 1198, 1230 (M.D.Fla.2004).

### 1. Market Share Measure

For the purposes of their motion, Defendants do not dispute Lockheed Martin's assertion that there is a distinct market for providing satellite launch services to the Government. Rather, Defendants' principal contention is that Lockheed Martin bases its claims of monopolization and attempted monopolization on a faulty measure of market share.

Ordinarily, the proper measure of market share "is the quantity of goods or services actually sold to consumers." *Id.* On occasion, however, courts have allowed for alternative measures of market share in cases where sales were a poor proxy for market power. The Supreme Court has

found in one case, for instance, that coal reserves were a better measure of market share than prior sales of coal where "[t]he focus of competition ... [was] not on the disposition of coal already produced but on the procurement of long-term supply contracts." *United States v. Gen. Dynamics,* 415 U.S. 486, 501, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1974).

Lockheed Martin contends that the appropriate market share measure in this case is the number of contracts for launches awarded from the time of the Air Force's EELV competition in 1998 to its reallocation of launch service contracts in 2003. Under Lockheed Martin's suggested formula, Boeing controlled a substantial part of the relevant market, having obtained 75% of the Air Force's EELV contracts, over 93% of NASA launch contracts, and 84% of all Government launches. Defendants do not dispute that these percentages would be sufficient to raise an inference that Boeing possessed or at least came dangerously close to possessing monopoly power. Rather, Defendants argue that the number of launches actually performed is a more appropriate measure of market share. Viewed accordingly, Defendants submit that Lockheed Martin actually enjoyed the dominant position in the Government launch services market.

■ Ultimately, the determination of which measure of market share to employ depends on the degree to which either Lockheed Martin's or Defendants' proffered measure of market share effectively functions as a proxy for monopoly power. This is, as *General Dynamics* recognized, a determination that rests on the particular characteristics of the relevant market.

415 U.S. at 501, 94 S.Ct. 1186. While, in most markets, "one may reasonably suppose that a company which has attracted a given number of sales will retain that competitive strength," it does not necessarily follow that past production will always "give a proper picture of a company's future ability to compete." *Id.* Accordingly, it cannot be said that the use of some measure of market share other than past production is *per se* invalid as a matter of law.

■ Nor is it possible in this case to say, on the basis of the parties' pleadings alone, that either contracts awarded or contracts performed is the superior measure of market share. While Defendants may yet establish that contracts awarded in the Government launch services market do not accurately predict a company's future ability to compete, determining the proper measure of market share relies on a highly contextual analysis and, thus, must ultimately be aided by discovery and additional argument by the parties.[6]

■ Defendants contend, alternatively, that, even if the proper measure of market share is contracts awarded, Lockheed Martin has "gerrymandered" that measure by omitting contracts reallocated to Lockheed Martin once the government learned of Boeing's alleged misconduct, as well as contracts awarded to Lockheed Martin following the reallocation. As Lockheed Martin argues, however, "[t]he fact that Boeing was penalized by the Air Force and lost some business due to its own gross misconduct does not [necessarily] mean that it did not monopolize or attempt to monopolize the relevant market during the period *before* the 2003 reallocation." Doc.

6. In addition to its allegations of market share, Lockheed Martin's monopolization and attempted monopolization claims are bolstered by its claims that certain entry barriers in the relevant market-including high investment costs, regulatory barriers, and inelastic demand-also enabled Boeing to acquire or nearly acquire monopoly power. *See Lockheed Martin Corp.,* 314 F.Supp.2d at 1230.

336 at 9. "[A] drop in [D]efendant's market share alone" will not "defeat a claim of attempted monopolization" or monopolization. *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 991 (5th Cir.1983); *see also U.S. Anchor Mfg.*, 7 F.3d at 1001 (concluding that there was no "dangerous probability" that the defendant would have achieved monopoly power where the defendant "possessed less than 50% of the market *at the time the alleged predation began and throughout the time when it was alleged to have continued"*) (emphasis added). To conclude otherwise would be especially peculiar where the decline in market share is the product of the Defendants' misconduct. Therefore, under the facts as alleged by Lockheed Martin, a pre-reallocation calculation of market share is not invalid as a matter of law.[7]

■ Finally, Defendants argue that the alleged Government heavy-lift launch services market was too small to allow for a claim of monopolization or attempted monopolization. Indeed, the "market" for heavy-lift launch services consisted of only two launches. Thus, as Defendants contend, "in a bid competition for just two heavy launches, there [were] only three possible outcomes: Boeing wins 100%, Lockheed Martin wins 100%, or each wins 50% of the market." While there is no definitive guidance on how small a market must be in order to preclude a monopolization claim, at least one court has suggested that market share within a "minuscule" market is too unreliable a basis for a finding of monopoly power. *See United States v. Baker Hughes*, 908 F.2d 981, 986 (D.C.Cir.1990). The Court agrees and finds that the so-called heavy-lift launch services market provides a particularly poor foundation for Lockheed Martin's monopolization and attempted monopolization claims.

As Defendants point out, the difference between what Lockheed Martin alleges was monopoly power and what would have constituted an equal share of the heavy-lift launch services market amounts to the allocation of *a single contract.* The Court refuses, as a matter of law, to grant relief upon such a tenuous basis.

2. Ability to Exercise Market Power in the Government Satellite Launch Services Market

Defendants further maintain that, even if contracts awarded is the proper measure of market share, the particular structure of the Government satellite launch services market precluded the possibility of either competitor achieving monopoly power. The crux of Defendants' argument here is that the Government as a monopsony purchaser, committed as it was to a two-competitor market, would never have allowed Boeing or any other competitor to raise prices or exclude competition and that by definition, then, Boeing could never have possessed monopoly power.

■ This Court has already refused to adopt a *per se* rule that monopoly power cannot be achieved in a "fixed-term, fixed-price bidding market." *Lockheed Martin*, 314 F.Supp.2d at 1230–31. Lockheed Martin has alleged, moreover, at least with respect to the NASA 19–Pack order, that Boeing did actually exercise monopoly power. At this point, it is unclear whether the structure of the market was such that it precluded Boeing from exercising monopoly power. That being said, this find-

---

7. This is not to say that reallocation will not bear on the final analysis of whether Boeing attempted to, or did, monopolize the Government launch services market. As the Court discusses below, reallocation may be highly relevant to the question of whether the structure of the relevant market was such that it was impossible for Boeing to exercise monopoly power.

ing in no way reflects upon the prospects of Defendants ultimately succeeding in their argument. Defendants may yet show, *under the particular facts of this case,* that the Government would not have allowed—and, in fact, did not allow—Boeing to manipulate prices or exclude competition.

### 3. Antitrust Injury

 Defendants do not dispute that Lockheed Martin has sufficiently alleged injury to itself as a result of Boeing's conduct but contends that Lockheed Martin has failed to sufficiently plead that Boeing's alleged conduct resulted in harm to the market as a whole. The origins of the antitrust injury doctrine are found in the case of *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), in which the Supreme Court held that, under the Clayton Act, plaintiffs are required to allege "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." In other words, the Court explained, the injury must be "the type of loss that the claimed violations would be likely to cause." *Id.* at 489, 97 S.Ct. 690. Thus, as the Court later articulated, "[e]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal anti-trust laws." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 225, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993).

Antitrust injury as contemplated by the *Brunswick* Court is not, however, the issue that Boeing raises here. Rather than arguing that Lockheed Martin's alleged injuries are not of a "type the antitrust laws were intended to prevent." Defendants instead rely on the Eleventh Circuit's holding in *Spanish Broadcasting System v. Clear Channel Communications, Inc.,* that an antitrust plaintiff must allege harm not only to itself but "in the market as a whole." 376 F.3d 1065, 1075 (11th Cir. 2004). In that case, the court rejected what it deemed to be the plaintiff's attempt "to equate [its own] harm ... with harm to competition." *Id.* The critical determination in *Spanish Broadcasting* was, thus, not that the plaintiff's alleged harm was not an antitrust injury, at least as that term was defined in *Brunswick,* but that the plaintiff failed to allege harm to competition "in the market as a whole."

It is not entirely clear whether the requirement under *Spanish Broadcasting* is a heightening of the burden under *Brunswick* or an additional requirement. Similarly, it is doubtful whether an injury to competition as contemplated by the *Spanish Broadcasting* court ought to even be referred to as an *antitrust injury. See* Doc. 286 (equating injury to the market as a whole with antitrust injury); *see also* Herbert Hovenkamp, *Chicago and its Alternatives,* 1986 Duke L.J. 1014, 1022–23 (1986) (noting the "problem" that " 'antitrust injury' can have more than one meaning"). However much the resolution of these questions may ultimately aid in analysis of what is already a complex area of law, it is neither appropriate nor necessary to answer them at this point. For present purposes, what matters is this Court's determination that *Spanish Broadcasting* requires an injury to competition as a whole, regardless of whether it be a requirement in addition to, or apart from, the requirement that the plaintiff's injury be of antitrust concern.

 Lockheed Martin has met this burden. Unlike the plaintiff in *Spanish Broadcasting,* Lockheed Martin is not asking the Court to equate its alleged injury with injury "in the market as a whole." To the contrary, as has already been noted, Lockheed Martin has alleged that prices have increased and innovation has

decreased as the result of Boeing's anti-competitive conduct. These are injuries which, if proven, would demonstrate harm principally to the Government and not Lockheed Martin. In a market in which the Government is the sole purchaser, harm to it clearly constitutes harm to the market.

### 4. Conclusion

In sum, Lockheed Martin has succeeded in stating claims of monopolization and attempted monopolization, except to the extent that it relies on the market for providing heavy-lift launch services as constituting a market for antitrust purposes. Thus, with this lone exception, Defendants' motion to dismiss Lockheed Martin's claims of monopolization and attempted monopolization is denied.

### B. Lockheed Martin's Conspiracy Claims

This Court previously dismissed Lockheed Martin's conspiracy claims, because, as alleged, Boeing's coconspirators were employees, or were otherwise not sufficiently independent, of Boeing to avoid the *Copperweld* "intracorporate conspiracy doctrine." [8] In its Amended Complaint, Lockheed Martin now alleges that each of Boeing's coconspirators was separate and independent of Boeing as of the time that the alleged conspiracy to violate Sections 1 and 2 of the Sherman Act began. Additionally, among the coconspirators named in Lockheed Martin's original complaint, only Branch remains. In Lockheed Martin's Amended Complaint, William Erskine and Larry Satchell have been replaced by Hora and Allen Cantu as named coconspirators.

 A claim for conspiracy to monopolize requires a plaintiff to allege: "(1)

concerted action deliberately entered into with the specific intent of achieving a monopoly; and (2) the commission of at least one overt act in furtherance of the conspiracy." *Levine v. Cent. Fla. Med. Affiliates,* 72 F.3d at 1556 (11th Cir.1996) (citation omitted). A plaintiff attempting to plead a claim of conspiracy to restrain trade under Section 1, by contrast, "does not need to allege the specific element of a conspiracy to monopolize, but must allege 1) an agreement to enter a conspiracy, 2) designed to achieve an unlawful objective." *Aquatherm Indus., Inc. v. Fla. Power & Light Co.,* 145 F.3d 1258, 1262 (11th Cir.1998).

 Significantly, Hora and Allen Cantu, unlike Erskine and Satchell, were not Boeing employees as of the time that their alleged conspiracy with Boeing began. Thus, the most common basis for exemption under the "intracorporate conspiracy doctrine"—that the alleged coconspirators were officers or employees of the defendant conspirator—does not apply to either Hora or Allen Cantu. Nor does that ground for exemption now apply to Branch, who allegedly entered into his conspiracy with Boeing while he was still employed with Lockheed Martin and, moreover, is no longer alleged to have been acting "on behalf of Boeing" at that time.

Still, Defendants maintain that Lockheed Martin's failure to allege that any of Boeing's three alleged coconspirators were "independent sources of economic power" is fatal to its claims of conspiracy. The prior order dismissing Lockheed Martin's conspiracy claim noted, with regard to Branch:

> The allegations in the instant case do not suggest that Branch *himself* ever competed with or otherwise pursued goals divergent from Boeing's. In the

---

**8.** *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 767, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

five months before Branch was hired by Boeing, it is true that his alleged acts cannot be said to have been in *Lockheed Martin's* interest. His acts, however, were also not in his *own* interest as distinct from Boeing's interest, any more so than Erskine's or Satchell's acts in their official capacities were in their own distinct interests. Whether Branch was being paid by Boeing in those five months for handing over Lockheed Martin's documents or simply doing it to impress Boeing in his hopes of obtaining employment, his interests, for antitrust conspiracy purposes, were analogous to those of any formal employee or a wholly owned-subsidiary of Boeing. Indeed, the allegations of this Complaint more than once characterize Branch as "associated with Boeing." or as acting "on behalf of Boeing." The collusion between Branch and Boeing represented no joining of economic powers; it did not "deprive[ ] the marketplace of the independent centers of decisionmaking that competition assumes and demands." Collusion between Boeing and Lockheed Martin or a similar competitor would have represented a threat targeted by the Sherman Act, but collusion between Boeing and Branch, no matter how despicable, did not represent such a threat. All conspiracy claims against Branch and Boeing are accordingly dismissed.

*Lockheed Martin,* 314 F.Supp.2d at 1237 (citations omitted). In sum, Branch's actions were found to be indistinguishable from those of a Boeing employee or officer. That is, by virtue of acting "on behalf of Boeing," his actions were effectively the actions of Boeing. As such, allowing the conspiracy claim against Boeing to proceed would have violated the principle enunciated in *Copperweld* that the Sherman Act's conspiracy provisions do not reach "unilateral conduct." *See Copperweld,* 467 U.S. at 768, 104 S.Ct. 2731.

However, in its Amended Complaint, by abandoning the language of its earlier complaint that Branch or Boeing's other alleged coconspirators were acting "on behalf of Boeing," Lockheed Martin has succeeded in stating conspiracy claims under Sections 1 and 2. Although the Court is somewhat skeptical that Lockheed Martin can ultimately show that the actions of Boeing's alleged coconspirators were not the actions of Boeing for antitrust purposes,[9] the Court nevertheless cannot say that it "appears beyond doubt" that Lockheed Martin "can prove no set of facts which would entitle it to relief" on its conspiracy claims.[10]

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

9. To the extent that this Court might have suggested in its earlier order that an antitrust conspiracy claim required a showing that the defendant's coconspirators were its competitors or even market participants at the time that the alleged conspiracy began, the Court now clarifies, in light of *Spanish Broadcasting,* that there is no such requirement. *See* 376 F.3d at 1078 n. 10.

10. The Court is particularly reluctant to grant a motion to dismiss a conspiracy claim. Given that it is in the very nature of a conspiracy to conceal its existence, Plaintiffs face an especially difficult challenge in pleading conspiracy claims with specific factual allega-

tions. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.,* 711 F.2d 989, 995 (11th Cir.1983) ("Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. Indeed, such a motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *This is particularly true in an antitrust suit where the proof and details of the alleged conspiracy are largely in the hands of the alleged coconspirators."*) (citations omitted) (emphasis added).

1. Defendants' Motion to Dismiss Counts XXI–XXII of Lockheed Martin's Supplemental and Amended Complaint (Doc. 286) alleging that Boeing monopolized in violation of 15 U.S.C. § 2 and § 542.18 *et seq.*, Florida Statutes, is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** to the extent that Lockheed Martin's claims of monopolization and attempted monopolization rely on Government heavy-lift launch services as a separate market. The motion is otherwise **DENIED**.

2. Defendants' Motion to Dismiss Counts XXIII–XXIV of Lockheed Martin's Supplemental and Amended Complaint (Doc. 286) alleging that Boeing attempted to monopolize in violation of 15 U.S.C. § 2 and § 542.18 *et seq.*, Florida Statutes, is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** to the extent that Lockheed Martin's claims of monopolization and attempted monopolization rely on Government heavy-lift launch services as a separate market. The motion is otherwise **DENIED**.

3. Defendants' Motion to Dismiss Counts XXV–XXVI of Lockheed Martin's Supplemental and Amended Complaint (Doc. 286) alleging that Boeing conspired to monopolize in violation of 15 U.S.C. § 2 and § 542.18 *et seq.*, Florida Statutes, is **DENIED**.

4. Defendants' Motion to Dismiss Counts XXVII–XXVIII of Lockheed Martin's Supplemental and Amended Complaint (Doc. 286) alleging that Boeing conspired to restrain trade in violation of 15 U.S.C. § 1 of the Sherman Antitrust Act and § 542.18 *et seq.*, Florida Statutes, is **DENIED**.